**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **UNITED STATES** *ex rel.* **BID SOLVE, INC.,** <br><br> Plaintiff/Relator, <br><br> v. <br><br> **CWS MARKETING GROUP, INC.,** *et al.*, <br><br> Defendants. | Case No. 1:19-cv-01861-TNM |

**MEMORANDUM OPINION**

Bid Solve, Inc. sues CWS Marketing Group, Inc. and its president, C. William Stearman, and CEO, Jennifer Stearman (collectively, "Defendants"), alleging that they violated the False Claims Act. Bid Solve argues that Defendants are liable under both a fraudulent inducement and an implied false certification theory of liability. Defendants move to dismiss, contending that Bid Solve failed to allege with particularity the existence of false statements. They argue also that even if Bid Solve did properly allege that they made false statements, it failed to adequately plead materiality, causation, and knowledge.

Because Bid Solve's Complaint makes only the barest of allegations about the Stearmans, the Court agrees that both counts against them should be dismissed. The Court also agrees that Bid Solve's Complaint fails to allege with particularity the existence of any false claim under the implied false certification theory of liability. But because the Court finds that Bid Solve pled its fraudulent inducement theory with the requisite particularity and established materiality, causation, and knowledge as to that theory, the Court will deny the motion to dismiss that count against CWS Marketing Group, Inc.

**I.**

**A.**

The Small Business Act, 15 U.S.C. §§ 631–657, requires federal agencies to award at least 23% of federal contract dollars to small businesses.  Compl. ¶¶ 17–18, ECF No. 1.  To achieve this goal, the U.S. Small Business Administration ("SBA") runs a government contracting program "whereby certain federal government contracts are set aside for companies that fall below certain [revenue] thresholds."  *Id.* ¶ 17 (cleaned up).  The SBA determines the revenue thresholds applicable to a given set-aside contract by assigning the contract a North America Industry Classification System ("NAICS") code.  *Id.* ¶ 19.  A NAICS code sets the maximum average revenue a company can have for the preceding three years to qualify as "small."  If, for example, the applicable NAICS code sets a revenue threshold of $10 million, then only companies with cumulative revenues of $30 million or less in the three most recent fiscal years qualify as "small" for the contract and may bid on it.

The SBA's small business government contracting program is self-certifying.  The SBA does not review a company's eligibility for a set-aside contract unless a losing bidder files a protest, triggering a so-called "size determination" by the SBA.  *Id.* ¶ 25.  The SBA requires the winning bidder to submit tax returns proving that it falls below the applicable revenue threshold.  *Id.*  If the SBA determines that the protested company does not qualify as small, "the government must cancel the contract award to the protested company and award the contract to the company next in line for the award."  *Id.*

**B.**

In March 2017, the Internal Revenue Service, Office of Treasury Procurement Services ("IRS OTPS") solicited bids for property auction services.  Compl. ¶ 2.  The applicable NAICS

code carried a $7.5 million revenue threshold.  *Id.* ¶ 20.  So, to compete for this contract, a company's cumulative revenue for the three prior fiscal years could not exceed $22.5 million ($7.5 million multiplied by 3).  *Id.*

Bid Solve and CWS Marketing Group, Inc. ("CWS") both submitted bids and self-certified that they were small.  *Id.* ¶ 30.  In February 2018, IRS OTPS issued a pre-award letter informing both bidders that it had selected CWS.  *Id.* ¶ 32.  The next day, Bid Solve filed a protest with the SBA claiming that CWS was not "small" for this contract and that its certification was false.  *Id.* ¶ 35.  CWS submitted additional financial information to the SBA, which issued a decision several weeks later in its favor.  *Id.* ¶ 37–38.  CWS is now performing under the contract.  *Id.* ¶ 6.

After losing the bid protest, Bid Solve filed this lawsuit under the False Claims Act ("FCA"), 31 U.S.C. § 3729, *et seq.*, which allows a private plaintiff to act as a qui tam relator on behalf of the government to recover damages and civil penalties.  Compl. ¶ 1; *see also United States ex rel. Hood v. Satory Glob., Inc.*, 946 F. Supp. 2d 69, 80 (D.D.C. 2013).  "A person violates the FCA . . . if he 'knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval' by the government or 'knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim.'"  *United States ex rel. Cimino v. Int'l Bus. Machines Corp.*, 3 F.4th 412, 415 (D.C. Cir. 2021) (quoting 31 U.S.C. § 3729(a)(1)(A) and (B)).  When a plaintiff files an FCA complaint, the complaint is sealed for sixty days while the United States decides whether to intervene.  *Hood*, 946 F. Supp. 2d at 80.  If the government investigates and declines to intervene, then the complaint is unsealed, and the plaintiff may proceed with the case.  *Id.*

The United States declined to intervene here, leaving Bid Solve to pursue the lawsuit alone.  *See* Notice of Election to Decline Intervention, ECF No. 8.  Bid Solve maintains that CWS's self-certification at the initial bidding stage was false and that, after Bid Solve filed its protest, CWS submitted to the SBA tax returns with false revenues.  Bid Solve argues that these false statements constitute implied false certification and fraudulent inducement in violation of §§ 3729(a)(1)(A) and (B).  CWS seeks dismissal under Federal Rules of Civil Procedure 9(b), 12(b)(1), and 12(b)(6).  The motion is now ripe.

## II.

Rule 9(b) states that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  In the FCA context, Rule 9(b) means that "the pleader [must] state the time, place[,] and content of the false misrepresentations, the fact misrepresented and what was retained or given up as a consequence of the fraud."  *United States ex rel. Williams v. Martin-Baker Aircraft Co.*, 389 F.3d 1251, 1256 (D.C. Cir. 2004) (cleaned up).  Courts have sometimes characterized a plaintiff's burden as providing "the who, what, when, and where with respect to the circumstances of the fraud."  *United States ex rel. Brady Folliard v. Comstor Corp.*, 308 F. Supp. 3d 56, 68 (D.D.C. 2018) (cleaned up).

To avoid dismissal under Rule 12(b)(1), the plaintiff bears the burden of proving that the Court has subject matter jurisdiction to hear its claims.  *See Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015).  In evaluating a motion to dismiss under Rule 12(b)(1), the Court must "treat the complaint's factual allegations as true . . . and must grant plaintiff[s] the benefit of all

inferences that can be derived from the facts alleged." *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (cleaned up).

To survive Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Hurd v. District of Columbia*, 864 F.3d 671, 678 (D.C. Cir. 2017) (cleaned up).  A plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The Court accepts the complaint's factual allegations as true and grants the plaintiff "all inferences that can be derived from the facts alleged." *L. Xia v. Tillerson*, 865 F.3d 643, 649 (D.C. Cir. 2017) (cleaned up).  The Court need not, however, credit "a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (cleaned up).  The Court considers "only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint[,] and matters of which [it] may take judicial notice." *Hurd*, 864 F.3d at 678 (cleaned up).

### III.

Bid Solve argues that the Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331.[1]  CWS responds that the FCA's so-called Tax Bar precludes jurisdiction.  The Tax Bar arises from a provision of the FCA which states that the FCA "does not apply to claims, records, or statements made under the Internal Revenue Code of 1986." 31 U.S.C. § 3729(d).

---

[1]  Bid Solve also asserts subject matter jurisdiction under 31 U.S.C. § 3732.  But courts have interpreted this statute to refer to venue and *personal* jurisdiction for FCA claims. *See, e.g.*, *United States v. Fahnbulleh*, 752 F.3d 470, 477 (D.C. Cir. 2014) (applying § 3732 to venue analysis); *United States v. Intrados/Int'l Mgmt. Grp.*, 265 F. Supp. 2d 1, 6 (D.D.C. 2002) ("For cases brought under the FCA, section 3732 is the provision that governs the court's analysis of personal jurisdiction and venue.")  In any event, the Court need not decide whether § 3732 confers subject matter jurisdiction because it does not change the outcome.

Courts in this district have addressed the Tax Bar only rarely, and these cases involved plaintiffs seeking to recover unpaid taxes. *See, e.g.*, *Canen v. Wells Fargo Bank, N.A.*, 118 F. Supp. 3d 164, 170 (D.D.C. 2015) (denying recovery under the FCA because "Plaintiffs root their FCA claims in lost 'income tax revenue'"); *Ananiev v. Freitas*, 37 F. Supp. 3d 297, 307 (D.D.C.) (same), *aff'd*, 587 F. App'x 661 (D.C. Cir. 2014). As Bid Solve does not seek to recoup taxes, these cases provide little guidance.

The Court will not apply the Tax Bar here because Bid Solve's arguments do not arise under the Internal Revenue Code ("Tax Code"). The Tax Bar applies to claims "made under" the Tax Code. 31 U.S.C. § 3729(d). But Bid Solve's claims are governed by the Small Business Act, 15 U.S.C. §§ 631–657. The contract CWS and Bid Solve sought was classified as a small business set-aside contract under SBA regulations. Compl. ¶¶ 17–29. CWS and Bid Solve had to self-certify as small because of these regulations. *Id.* ¶¶ 25, 29–30. And when IRS OTPS selected CWS and Bid Solve filed a protest, the SBA adjudicated that protest and issued a size determination, not the IRS. *Id.* ¶¶ 35, 38.

True, the Complaint relies heavily on CWS's tax returns. But this is not fatal for three reasons. *First*, the Complaint alleges that CWS knowingly falsified its self-certification, Compl. ¶ 31, and "if CWS ha[d] not made that certification, it would not have qualified for the contract," *id.* ¶ 34. At the bidding stage, then, the tax returns were irrelevant. *Second*, although Bid Solve alleges that the "false statements contained in the 2014–2016 tax returns" were "material" at the bid protest stage, *id.* ¶ 41, the SBA used these tax returns to calculate CWS's revenues as defined by SBA regulations, not by the Tax Code. *See id.* ¶ 24; Pl.'s Opp'n to Defs.' Mot. to Dismiss ("Pl.'s Opp'n.") at 10–11, ECF No. 23.[2] *Third*, Bid Solve relies on the tax returns only because

---

[2] All page numbers refer to those generated by the Court's CM/ECF system.

the SBA regulations incorporate provisions of the Tax Code.  *See* Pl.'s Opp'n at 10–11.  But the regulations' incorporation of the Tax Code does not mean the Tax Code governs Bid Solve's allegations.  *Accord United States ex rel. Calilung v. Ormat Indus.*, Ltd., No. 3:14-CV-00325-RCJ, 2015 WL 1321029, at *13 (D. Nev. Mar. 24, 2015) ("[I]ncorporation of definitions contained in the [Tax Code] does not necessarily mean that Relators' claims are made under the Tax Code.").  Bid Solve points to no Tax Code sections that CWS violated; it invokes only the Small Business Act and its regulations.  Bid Solve's allegations are therefore not "made under" the Tax Code, 31 U.S.C. § 3729(d), and the Tax Bar does not apply.

CWS's counterargument relies heavily on a Second Circuit case, *United States ex rel. Lissack v. Sakura Glob. Cap. Markets, Inc.*, 377 F.3d 145 (2d Cir. 2004).  *Lissack* considered a provision of the Tax Code that allows municipal governments to issue bonds that pay interest exempt from federal taxation.  *Id.* at 147.  To prevent municipalities from engaging in arbitrage and profiting from their bonds' tax-free status, the Tax Code tightly regulates how municipalities can issue these bonds and invest the proceeds from their sale.  *Id.* at 147–48.

Lissack accused Sakura of engaging in a "yield burning" scheme involving certain tax-free municipal bonds.  *Id.* at 149–51.  Sakura's scheme allegedly caused municipal governments to purchase more interest-bearing Treasuries and fewer zero-interest federal government bonds than they otherwise would have.  Lissack claimed that Sakura's actions damaged the federal government in two ways.  First, because municipalities bought fewer zero-cost bonds, the federal government was deprived of interest-free borrowing.  *Id.* at 151.  Next, because municipalities bought more interest-bearing Treasuries, the federal government paid out more interest than it otherwise would have.  *Id.*  Lissack sought "to collect amounts the Government supposedly lost through the municipalities' bond purchases."  *Id.* at 153.

The Second Circuit applied the Tax Bar because "Lissack's entire case under the FCA depends on proving that Sakura violated provisions of the Tax Code." *Id.* "It is the Tax Code that provides for the tax-exempt status of municipal bonds . . . it is the Tax Code that excludes from tax-exempt status any bond classified as an arbitrage bond; and it is the Tax Code that provides detailed yield restrictions for escrow accounts and defines what constitutes an arbitrage bond." *Id.* at 153–54. The court also noted that "all that Lissack is attempting to accomplish here is to recover amounts that the IRS can recover for the Government on its own under the Tax Code." *Id.* at 156.

*Lissack* does not get CWS where it needs to go. For starters, recall that Bid Solve's claim does not depend solely on a violation of the Tax Code because it alleges CWS knowingly falsified its self-certification. Compl. ¶ 31. Indeed, it is conceivable that CWS filed false tax returns with the SBA but accurate tax returns with the IRS, presumably meaning that no violation of the Tax Code occurred at all. Bid Solve's case therefore does not "rise[] or fall[] on finding a violation of the Tax Code." *Lissack*, 377 F.3d at 154. More, unlike in *Lissack*, the IRS cannot "recover the precise amounts [Plaintiff seeks] in this action." *Id.* at 153. This case involves no "recovery of taxes, or of any fine, penalty, or forfeiture," which is the exclusive purview of the IRS. 26 U.S.C. § 7401.

CWS argues that because "the IRS could have canceled this Contract at any time and has decided not to," this case is just like *Lissack*. Defs.' Mem. in Supp. of Mot. to Dismiss at 12 ("Defs.' Mem."), ECF No. 22-1. But this muddles the issues. Yes, the IRS could have canceled the contract, but that is only because it happens to be the contracting agency here. That has no bearing on whether the IRS can pursue recovery of taxes because of CWS's alleged fraud.

Indeed, the IRS cannot do that here because Bid Solve makes no allegation that CWS failed to pay taxes owed.  Thus, *Lissack*'s analytical framework does not apply.

Bid Solve has met its burden of proving that the Court has subject matter jurisdiction to hear its claims.  *See Arpaio*, 797 F.3d at 19.

**IV.**

The Court moves next to CWS's argument that Bid Solve fails to adequately plead the existence of any false claim.  The Court considers in turn the parties' arguments about implied false certification in Count I of the Complaint and about fraudulent inducement in Count II.[3]

**A.**

Under an implied false certification theory, "a claim for payment is false when it rests on a false representation of compliance with an applicable federal statute, federal regulation, or contractual term."  *United States v. Sci. Apps. Int'l Corp.*, 626 F.3d 1257, 1266 (D.C. Cir. 2010).  As relevant here, a "claim" is "any request or demand, whether under a contract or otherwise, for money or property . . . [that] is presented to an officer, employee, or agent of the United States."  31 U.S.C. § 3729(b)(2)(A).  The Supreme Court has held that the "implied certification theory can be a basis for liability, at least where two conditions are satisfied: first, the claim does not merely request payment, but also makes specific representations about the goods or services

---

[3]  Bid Solve brings a two-count Complaint, Compl. ¶ 45–50, and argues these counts encompass the implied false certification and fraudulent inducement theories of liability, Pl.'s Opp'n at 21–30 (discussing a fraudulent inducement theory of liability), at 31–32 (discussing an implied false certification theory).  Bid Solve does not match its theories to the counts in its Complaint.  CWS maintains Count I, brought under 31 U.S.C. § 3729(a)(1)(A), covers the implied false certification theory and Count II, brought under § 3729(a)(1)(B), covers the fraudulent inducement theory.  *See* Defs.' Reply Mem. in Supp. of Mot. to Dismiss ("Reply Mem.") at 7, ECF No. 24.  CWS's framing is supported by courts in this jurisdiction, *see e.g., United States ex rel. Tran v. Computer Scis. Corp.*, 53 F. Supp. 3d 104, 117 (D.D.C. 2014), and the Court adopts it.

provided; and second, the defendant's failure to disclose noncompliance with material statutory, regulatory, or contractual requirements makes those representations misleading half-truths." *Univ.'l Health Servs., Inc. v. United States*, 136 S. Ct. 1989, 2001 (2016).

CWS argues that Bid Solve "fails to sufficiently plead factual circumstances" to support an implied certification theory because Bid Solve "fails to identify or describe a single claim submitted to the government for payment that was allegedly false." Defs.' Mem. at 18. CWS notes that, under Rule 9(b), courts in this district have required plaintiffs to allege particulars about the implicit certification and the claims submitted for payment. *Id.* at 17–19; *see, e.g.*, *Pencheng Si v. Laogai Rsch. Found.*, 71 F. Supp. 3d 73, 94 (D.D.C. 2014) ("Relator does not provide any details as to the specific contents of the certification, the timing of the certification, how many times this certification was made . . . or, indeed, who made the certification on Defendants' behalf."); *Martin v. Arc of Dist. of Colum.*, 541 F. Supp. 2d 77, 83 (D.D.C. 2008) ("In sum, plaintiff fails to plead with particularity a viable claim under the FCA because the complaint fails to identify who, if anyone, made a false representation to the government and fails to provide any of the purported details such as the time, place, and contents of the alleged false representation.").

CWS is correct. Bid Solve makes only bare bones allegations about the claims CWS submitted. Bid Solve says that "CWS is currently performing under the IRS OTPS contract, and in connection therewith has submitted, and continues to submit, claims for payment to the United States." Compl. ¶ 6. These claims are false, Bid Solve alleges, because they "implicitly certify that CWS had a legal right to the award of that contract." *Id.* But Bid Solve alleges nothing about the "specific contents" or timing of the certification and how the certification relates to the claims for payment CWS is allegedly submitting. *Penchang*, 71 F. Supp. 3d at 94. These vague

allegations struggle to meet even the more forgiving pleading standard of Rule 12(b)(6), much less the heightened Rule 9(b) standard.

Bid Solve appears to recognize this weakness and replies that "the primary theory of this case . . . is that the claims for payment are legally considered 'false claims' because the contract was obtained by fraud." Pl.'s Opp'n. at 21. This explanation blurs the line between Bid Solve's two theories of recovery because it describes a fraudulent inducement theory, not an implied false certification theory. *See Scollick ex rel. United States v. Narula*, No. 14-cv-1339 (RCL), 2020 WL 6544734, at *7 (D.D.C. Nov. 6, 2020) ("[U]nder the fraud in the inducement of falsity, claims submitted pursuant to a contract procured by fraud are considered false or fraudulent even without evidence that the claims were fraudulent in themselves.") (cleaned up). The theory of implied false certification must involve particularized allegations about the claims themselves, not the original award of the contract. Otherwise, the implied certification theory collapses into fraudulent inducement.[4] *See Univs. 'l Health Servs., Inc.*, 136 S. Ct. at 2001 (stating that the implied theory of certification involves a claim for payment that "makes specific representations about the goods or services provided").

Because Bid Solve fails to plead with particularity the existence of any implied false certification, the Court will dismiss Count I of the Complaint.

---

[4] Indeed, Bid Solve later admits that if one accepts its description of the causes of action, "this distinction between the two theories of liability is academic." Pl.'s Opp'n at 31 n.4. The Court rejects this view because the D.C. Circuit has explicitly recognized these two theories as distinct theories of liability. *See Cimino*, 3 F.4th at 417–18 (recognizing fraudulent inducement as a theory of liability); *Sci. Apps. Int'l Corp.*, 626 F.3d at 1261 (recognizing implied certification as a theory of liability).

**B.**

A fraudulent inducement occurs "when a person fraudulently induces the government to enter a contract and later submits claims for payment under that contract." *Cimino*, 3 F.4th at 417. "This means that each claim submitted to the Government under a contract which was procured by fraud is false even in the absence of evidence that the claims were fraudulent in themselves." *Id.* (cleaned up).[5]

CWS's first argument is that Bid Solve "fails to plausibly or particularly allege the existence of and circumstances surrounding any allegedly false claim or statement made to the government." Defs.' Mem. at 13–14. CWS maintains that Bid Solve cannot plausibly allege "generally, much less particularly, that false statements were even made. Instead, [Bid Solve] asks the Court to assume certain statements were likely made, and that it is 'more likely than not' that, if made, those statements may have been false." *Id.* at 15 (cleaned up). This does not meet Rule 9(b)'s high bar, CWS says, because Bid Solve's allegations "are based on an assumption, supported by conjecture and supposition stated in the most equivocal and vague way." *Id.* CWS contends that Bid Solve's allegations are so general it "has not even met the Rule 12(b)(6) standard of stating a plausible claim, because [Bid Solve] does not affirmatively state that any claim, false or otherwise[,] was ever made." *Id.* at 15–16.

Rule 9(b) is a high bar, but not as high as CWS would have the Court believe. Courts are not supposed to read Rule 9(b) in isolation. Rather, they read Rule 9(b) together with Rule 8, which requires only "a short and plain statement of the claim showing that the pleader is entitled

---

[5]  Concurring in *Cimino*, Judge Rao noted that "[t]he text of the FCA does not readily suggest liability for fraudulent inducement as a separate cause of action" because "[t]he plain meaning of the FCA requires a request for payment that is false or fraudulent." 3 F.4th 412 at 424–25 (Rao, J., concurring). CWS does not raise this issue, perhaps given the significant caselaw recognizing the theory, *id.* at 425–26, so the Court need not resolve the issue here.

to relief." Fed. R. Civ. P. 8(a)(2).  "The purposes of 9(b) as read in conjunction with Rule 8 are to ensure that the complaint is specific enough to allow defendants to prepare their defense, to prevent parties from bringing fraud claims as a pretext for the discovery of unknown wrongs, to discourage the initiation of suits brought solely for their nuisance value, and to safeguard potential defendants from frivolous accusations of moral turpitude."  *United States ex rel. Folliard v. CDW Tech. Servs., Inc.*, 722 F. Supp. 2d 20, 25 (D.D.C. 2010) (cleaned up).

Bid Solve satisfies these requirements as to CWS.  Bid Solve provided "the who, what, when, and where with respect to the circumstances of the fraud."  *Comstor Corp.*, 308 F. Supp. 3d at 68 (cleaned up).  The Complaint alleges that when CWS submitted its April 2017 bid to IRS OTPS, Compl. ¶ 30, CWS's self-certification was false because the NAICS code required three-year average annual revenues of $7.5 million, *id.* ¶ 30–31, and at least four contracts CWS had won over the preceding three years gave CWS an average annual revenue of about $9.45 million.  *Id.* ¶ 43(f).  When Bid Solve filed its protest, CWS submitted to the SBA's Area II Office of Government Contracting ("SBA Area Office") its federal tax returns and financial statements for 2014–2016 and a completed SBA Form 355.  *Id.* ¶ 37.

Bid Solve is not privy to the details of these documents.  But it alleges that, as with the self-certification, the documents must contain false statements because information available to Bid Solve reveals CWS's revenues exceeded the NAICS code revenue ceiling by at least $2 million.  *Id.* ¶ 35–37, 43.  It explains it acquired knowledge of these contracts from Erik Rayburn, a Bid Solve principal who "was formerly the controller of CWS from approximately June of 2012 through October 2014."  *Id.* ¶ 43(a).  Rayburn "was intimately familiar" with CWS's finances and contracts during that timeframe.  *Id.*  These allegations provide CWS with

the "who, what, when, and where with respect to the circumstances of the fraud" and provide CWS the information it needed to prepare a defense. *Comstar Corp.*, 308 F. Supp. 3d at 68.

CWS levels one more argument.  It maintains that when an FCA complaint involves a corporate defendant, the complaint must either include the identities of the individuals involved in the fraud or "allege with specificity how the company itself institutionalized and enforced its fraudulent scheme, and how it was manifested in corporate training materials and audit reports." Defs.' Mem. at 16 (quoting *United States ex rel. Heath v. AT&T, Inc.*, 791 F.3d 112, 125 (D.C. Cir. 2015)) (cleaned up).

But CWS misconstrues *Heath*.  The D.C. Circuit found these conditions "sufficient[]," not necessary.  *Health*, 791 F.3d at 125.  And the court invoked the following passage from a Sixth Circuit case:  "[W]here the corporation is the defendant in a [False Claims Act] action, we hold that a relator need not always allege the specific identity of the natural persons within the defendant corporation . . . .  [S]uch information is merely relevant to the inquiry of whether a relator has pled the circumstances constituting fraud with particularity."  *Id.* (quoting *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 509 (6th Cir. 2007)).  What matters is that the complaint alleges "that corporate levers were pulled; identifying precisely who pulled them is not an inexorable requirement of Rule 9(b) in all cases."  *Id.*  Bid Solve meets that standard as to CWS.

The Stearmans are another matter.  Bid Solve makes the barest of factual allegations about them, arguing only that they "caused CWS to make the false statements, and submit the misleading documents."  Comp. ¶ 40.  Although Defendants argue the pleading is insufficient as to the Stearmans, Defs.' Mem. at 16, Bid Solve's response to that argument does not mention the Stearmans by name.  *See* Pl.'s Opp'n. at 16–21.  Instead, Bid Solve says that "the Complaint

fully satisfies the goals of Rule 9(b)'s particularity requirement" because even if "Defendants . . . dispute the falsity" of their statements, "it is highly unlikely that they will dispute that . . . those statements were made." *Id.* at 17.

This does not satisfy Rule 9(b) as to the Stearmans because it does not state "the time, place[,] and content of the false misrepresentations, the fact misrepresented and what was retained or given up as a consequence of the fraud." *Williams*, 389 at 1256 (quoting *Kowal*, 16 F.3d at 1278). Elsewhere, Bid Solve contends that it is "entirely plausible" that the "two owners, and top executives, of the company played a role in causing [false] presentment." Pls. Opp'n at 33. But that is relevant to the false presentment theory, not fraudulent inducement. Finally, Bid Solve says the Stearmans "knew or should have known that CWS was making false statements." *Id.* at 36. But even if that is true, it is immaterial to whether the Complaint provides the Stearmans with notice that "is specific enough to allow [D]efendants to prepare their defense." *CDW Tech. Servs., Inc.*, 722 F. Supp. 2d 20, 25 (D.D.C. 2010) (cleaned up).

Rule 9(b) requires clarity and specificity when relators hale defendants into court over fraud allegations. Bid Solve does not provide that specificity. The Court will therefore dismiss Count II as to the Stearmans.

## V.

The Court now moves to CWS's arguments about materiality, causation, and knowledge. The Court considers these arguments only under the fraudulent inducement theory and only as they apply to CWS as a corporate defendant.[6] Because Bid Solve does not plead a single

---

[6] Bid Solve's Complaint contains no particularized allegations about materiality, causation, and knowledge as to the Stearmans. Thus, Bid Solve has not adequately alleged these elements as to the Stearmans, providing an independent reason for the Court to dismiss all claims against them.

allegation related to a particular claim submitted for payment, it cannot make out any argument for materiality, causation, or knowledge as to its implied certification theory of liability.

### A.

In the FCA context, "material" means "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." 31 U.S.C. § 3729(b)(4). In the fraudulent inducement theory, "a defendant's fraud is material if it was *capable* of influencing the government's decision to enter into a contract." *Cimino*, 3 F.4th at 423 (emphasis added). A materiality inquiry zeroes in on the word "capable." The inquiry is not whether the defendant's fraud *caused* the government to sign a contract, because "a statement could be material—that is, capable of influencing the government's decision to enter a contract—without causing the government to do so." *Id.* at 419. Thus, although both materiality and causation "require considering the effect of a defendant's fraud on the government's decision to enter a contract," courts separately analyze materiality and causation. *Id.*

Bid Solve pleads that CWS's self-certification was material because "if CWS ha[d] not made that certification, it would not have qualified for the contract." Compl. ¶ 34. It pleads also that the tax returns CWS submitted at the bid protest stage were material because if CWS "had not made false statements in the 2014–2016 tax returns . . . CWS would not have been awarded the contract by IRS OTPS." *Id.* ¶ 42. Bid Solve uses language more suited to a causation inquiry than a materiality inquiry. But its allegations suffice because where certain requirements are prerequisites to bid for a contract, any attestation that the bidder meets the requirements will necessarily have a "tendency to influence" the contracting agency. 31 U.S.C. ¶ 3729(b)(4).

CWS's primary counterargument is that, because the government awarded it the contract and continued to pay it after Bid Solve raised allegations of fraud, even if fraud did occur it

could not have been material.  Defs.' Mem. at 19–22.  CWS relies on *Universal Health Services*, in which the Supreme Court said that "if the Government pays a particular claim in full despite its actual knowledge that certain requirements were violated, that is very strong evidence that those requirements are not material." 136 S. Ct. at 2003.

But the Supreme Court made this statement in the context of discussing an implied certification theory of liability, not a fraudulent inducement theory.  *See id.* at 1995.  The Court put forward continued payment as a test of materiality to guard against "garden-variety" FCA claims alleging breaches of contract or regulatory violations that, even if the government had known about them, would not have influenced its decision to pay a claim.  *Id.* at 2003 ("A misrepresentation cannot be deemed material merely because the Government designates compliance with a particular statutory, regulatory, or contractual requirement as a condition of payment.").

Such a test makes little sense in the fraudulent inducement context because "the initial fraud in procuring the contract taints all subsequent actions, including the defendant's submission of claims to the government for payment under that contract. . . .  Thus, plaintiffs suing under the fraud in the inducement theory need only allege that false statements induced the government to award the contract, not also that those false statements were material to the government's *decision to pay the party under the contract*."  *Scollick*, 2020 WL 6544734, at *9. In other words, showing that the government continues to pay claims despite a contractual or regulatory violation hardly undermines a claim of fraudulent inducement.  If the fraud had a "tendency to influence" the government in signing the contract, a plaintiff has properly pled materiality even if the government continued to pay claims.  31 U.S.C. § 3729(b)(4).

CWS counters that the Court should not rely on *Scollick* because *Cimino* extended the materiality requirement discussed in *Universal Health Services* to the fraudulent inducement theory of liability. *See* Reply Mem. at 14–18. Thus, says CWS, the fact that IRS OTPS awarded the contract despite knowledge of Bid Solve's allegations and then continued to pay the claims submitted by CWS is evidence that CWS's fraudulent statements (if they exist) are immaterial. CWS also cites *United States ex rel. McBride v. Halliburton Co.*, 848 F.3d 1027 (D.C. Cir. 2017), for the proposition that the Court "should not ignore what actually occurred." *Id.* at 1034. In other words, because IRS OTPS was aware of Bid Solve's allegations and awarded CWS the contract anyway, the Court should not find materiality where the IRS OTPS found none.

CWS misunderstands *Cimino*. The Circuit explicitly distinguished *Universal Health Services* as discussing a false presentment theory of liability, not a fraudulent inducement theory. *Cimino*, 3 F.4th at 423. And although the court did state that "[a]t a later stage in the litigation," continued payment might be used to show lack of fraudulent inducement, it saved "resolution of [that] question[] . . . for another day." *Id.* The court did that in part because the contracting agency in *Cimino* could have learned of the fraud "and continued to pay . . . for any number of reasons that do not render [the defendant's] fraud immaterial." *Id.* As to CWS's reference to *McBride*, that case did not involve fraudulent inducement. *See McBride*, 848 F.3d at 1030–31.

CWS maintains that, even if the Court does credit *Scollick*, CWS could not have committed fraud because "the common law (and common sense) understanding of fraud is that a claim cannot stand if the individual or entity claiming fraud is aware of the falsity underlying the claim." Reply Mem. at 19. In other words, because the SBA "was on notice of the alleged falsity of CWS's size certifications and tax returns," it could not have been hoodwinked. *Id.* at 20.

But *Cimino* rejected that exact argument.  *Cimino* reversed the district court because the lower court doubted the veracity of the facts alleged in the complaint.  *See Cimino*, 3 F.4th at 423 ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable.") (cleaned up).  Although Bid Solve's Complaint does suggest that the SBA had notice of the potential falsity of CWS's self-certification, it *does not* allege that the SBA was on notice as to the alleged falsity of the tax returns.  It is plausible—and consistent with the Complaint—that Bid Solve alerted the SBA to the potential falsity of CWS's self-certification and that the SBA then requested CWS's tax returns, saw that the revenue numbers supported CWS's self-certification, and ended its examination without ever considering that the tax returns might be false.  To find that the SBA believed otherwise would require disbelieving the allegations in the Complaint—the very approach rejected by *Cimino*.

CWS makes three additional, unrelated arguments about materiality.  *First*, that the SBA used the incorrect NAICS code, and that, had the SBA used the correct one, CWS would have qualified even granting Bid Solve's allegations about the size of its revenues.  Defs.' Mem. at 23–24.  *Second*, that the SBA does not typically challenge contractors for incorrect statements in the certification process because those statements often result from errors or misunderstandings. *Id.* at 25–26.  And *third*, that "the chain of materiality was broken at the point that the SBA certified CWS as small" because "CWS should be able to rely on the SBA's determination that it is small."  *Id.* at 26–28.

All three arguments fail.  The first two fail because they rely on factual evidence not in the Complaint.  *Tele-Communications of Key West, Inc. v. United States*, 757 F.2d 1330, 1335 (D.C. Cir. 1985) ("Consideration of external materials . . . cannot properly take place under a dismissal for failure to state a claim.").  CWS argues that the proper NAICS code, 561990, has a

size threshold of $11 million—well above the $9.45 million Bid Solve alleged CWS averaged over the three years before the bid.  Defs.' Mem. at 24; Compl. ¶ 43(f).  But Bid Solve's Complaint says nothing about the 561990 NAICS code; considering CWS's argument would therefore require the Court to go outside the four corners of the Complaint.  The same is true of CWS's argument that the SBA regularly declines to act against contractors for incorrect statements in the certification process.  These arguments may work down the road, but not now.

CWS's third materiality argument sounds more in causation (discussed below in Section V.B) than materiality.  If the argument concerns materiality, it fails because it hinges on an out-of-circuit, unpublished, inapposite case:  *A1 Procurement, LLC v. Thermcor, Inc.*, No. 2:15CV15, 2017 WL 2881350 (E.D. Va. July 5, 2017).  The *Thermcor* Court found that even if the defendant, Thermcor, gave false statements to the government to qualify for the so-called 8(a) program, those false statements did not taint the claims Thermcor later submitted to the government.  *Id.* at *4.  But the court did not apply its reasoning to a fraudulent inducement theory of liability because the plaintiff "did not adequately plead a fraud-in-the-inducement theory."  *Id.*

Bid Solve particularly and plausibly pleads materiality, overcoming CWS's Rule 9(b) and 12(b)(6) arguments.

## B.

The FCA requires Bid Solve to plead both but-for and proximate cause.  *Cimino*, 3 F.4th at 420.  But-for causation "refers to the ordinary understanding of causation, which asks for proof that the defendant's conduct did in fact cause the plaintiff's injury."  *Id.* (cleaned up).  Although proximate cause "is not easy to define . . . [t]he question it presents is whether the harm alleged has a sufficiently close connection to the conduct the statute prohibits."  *Lexmark*

*Int'l, Inc. v. Static Control Comp'nts, Inc.*, 572 U.S. 118, 133 (2014).  In the FCA context, courts require "some direct relation between the injury asserted and the injurious conduct alleged." *United States v. Honeywell Int'l Inc.*, 502 F. Supp. 3d 427, 459 (D.D.C. 2020) (quoting *Bank of Am. Corp. v. City of Miami*, 137 S. Ct. 1296, 1305 (2017)).

Bid Solve adequately pleads both forms of causation for its fraudulent inducement theory.  It pleads that if CWS had not self-certified as small, it would not have qualified for the contract.  Compl. ¶ 34.  And it pleads that if CWS had not made false statements on its income tax returns, the SBA Area Office would have sustained Bid Solve's protest.  *Id.* ¶ 42.  The Court accepts these allegations as true, *Tillerson*, 865 F.3d at 649, and because CWS would not have won the contract without these statements, the Court finds Bid Solve has alleged but-for causation.

Bid Solve also properly pleads proximate cause.  There is a "direct relation" between the injury, Bid Solve's loss of the contract, and the injurious conduct, CWS's allegedly false statements.  *Honeywell*, 502 F. Supp. 3d at 459.  Bid Solve need allege nothing more.

CWS counters that "there were significant intervening causes . . . preventing any chain of causation."  Defs.' Mem. at 33.  *First*, CWS states that the contracting officer selected the wrong NAICS code, which "caused CWS's Contract to be evaluated under the incorrect revenue threshold."  *Id.*  But recall that CWS's arguments about the incorrect NAICS code rely on facts not alleged in the Complaint.  *Second*, CWS argues that "the SBA's review of the documentation submitted by CWS and their sign-off on the size determination and calculation broke the chain of causation as to CWS's self-certification."  Defs.' Mem. at 33.  But CWS cites no precedent blessing this dubious reasoning.  And that is hardly surprising, because Bid Solve alleges that the tax returns submitted to the SBA for its review were themselves fraudulent.  So, for CWS's

reasoning to be correct, the Court would have to hold that duping the government once exposes a defendant to FCA liability but duping it twice absolves it. "Fool me once shame on you, fool me twice shame on me" may be a good personal motto, but it is not the law. The Court declines the invitation to rewrite the law so radically and holds that Bid Solve successfully pleads causation for the purpose of Rules 9(b) and 12(b)(6).

**C.**

In the FCA context, "knowing" and "knowingly" mean that the defendant: (1) "has actual knowledge of the information"; (2) "acts in deliberate ignorance of the truth or falsity of the information"; or (3) "acts in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b). Rule 9(b) does not require a plaintiff to plead knowledge with particularity. *See United States v. Honeywell Int'l, Inc.*, 798 F. Supp. 2d 12, 22 (D.D.C. 2011) ("Because Rule 9(b) permits knowledge to be pled generally, there is no basis for dismissal for failure to plead knowledge with particularity.").

The Complaint pleads that CWS's self-certification that it was small was knowingly false, Compl. ¶ 31, as were the revenue numbers on the tax returns that it submitted, *id.* ¶ 39. Even if CWS did not know, deliberately ignore, or act with reckless disregard of the truth of its self-certification, after Bid Solve submitted its bid protest, CWS was on notice as to Bid Solve's allegations. At that point, it would have been almost impossible for CWS to act in deliberate ignorance of or reckless disregard of the truth of its tax returns. At the very least, Bid Solve's allegations permit the Court to draw the "reasonable inference" that CWS would have known. *Iqbal*, 556 U.S. at 678 (2009). Thus, Bid Solve adequately pleads knowledge.

**VI.**

For these reasons, the Court will dismiss Count I of the Complaint and will dismiss Count II of the Complaint as to the Stearmans.  Defendants' motion will otherwise be denied.  A separate order will issue.


Dated: October 15, 2021                          _____
                                                 TREVOR N. McFADDEN, U.S.D.J.