**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES *ex rel.* BID SOLVE, INC.**,<br><br>Plaintiff/Relator,<br><br>v.<br><br>**CWS MARKETING GROUP, INC., *et al.*,**<br><br>Defendants. | Case No. 1:19-cv-1861-TNM |

## <u>MEMORANDUM OPINION AND ORDER</u>

Two companies, Bid Solve and CWS Marketing Group, bid on a government contract reserved for small businesses. Bid Solve lost and cried foul. It claims that CWS understated its size and was not actually a small business. Bid Solve took its case to an agency and lost. Now it sues here under the False Claims Act, 31 U.S.C. § 3729. CWS and its owner move for summary judgment and Bid Solve moves for partial summary judgment. CWS made some misrepresentations, so the Court grants partial summary judgment to Bid Solve. But there remains a genuine issue of material fact as to whether CWS and its owners knew that those statements were false. So the Court denies their motion for summary judgment.

## I.

CWS Marketing Group is a government contractor that helps agencies sell seized property. Bid Solve Resps. to Defs. Stat. of Mat. Facts (SUMF) ¶¶ 30, 33, ECF No. 53-1. To get those contracts, CWS bids on them. *See, e.g., id.* ¶ 43. Over the years, CWS has helped sell more than $1.5 billion in seized assets. *Id.* ¶ 31.

This case spawns from one disputed contract.  Back in 2017, the IRS solicited bids for a contract to help it sell seized property.  *Id.* ¶ 39.  There was one important limit: only companies considered a "small business" could bid.  *Id.* ¶ 41.  And to be a small business, companies must have averaged under $7.5 million in annual "receipts" over the past three years.  *Id.*; *see also* 13 C.F.R. § 121.104 (defining "receipts" and specifying a three-year average).

CWS submitted a bid for that contract, certifying that it had average annual receipts of $5.5 million.  SUMF ¶¶ 43, 51.  As part of its bid, CWS also certified that it was a small business.  *Id.* ¶ 44.  But CWS had competition.  Another company, Bid Solve, also bid for the contract.  *Id.* ¶ 71.  And it too certified that it was a small business.  *Id.* ¶ 73.  Ultimately, the IRS awarded CWS the contract.  *Id.* ¶ 79.

But Bid Solve was not finished.  Just one day later, it challenged CWS's bid with the Small Business Administration.  *Id.* ¶ 80.  There, it claimed that CWS was not a small business because it had average annual receipts over $7.5 million.  *Id.* ¶ 81.  And thus, CWS did not qualify for the contract.  The agency asked for more evidence, investigated Bid Solve's claims, and eventually sided with CWS.  *See id.* ¶¶ 152, 155.  In the agency's view, CWS was indeed a small business.  *Id.* ¶ 152.  Bid Solve then appealed.  But its appeal was dismissed when it never properly served the agency.  *Id.* ¶¶ 166–68.

Next, Bid Solve filed this False Claims Act case against CWS, and its owners, C. William Stearman, and Jennifer Stearman.  *See generally* Compl., ECF No. 1.  The Court dismissed some counts and Bid Solve amended its Complaint.  *See United States ex rel. Bid Solve, Inc. v. CWS Mktg. Grp., Inc.*, 567 F. Supp. 3d 59, 64 (D.D.C. 2021); Am. Compl., ECF No. 45.  Now, Bid Solves sues only CWS and C. William Stearman for fraudulent inducement under the FCA.  *See* Am. Compl. ¶¶ 66–68 (citing 31 U.S.C. § 3729(a)(1)(B)).

Bid Solve's theory goes like this: The Defendants said that CWS was a small business because its average "receipts" were below $7.5 million. But the Defendants misreported CWS's receipts by improperly subtracting certain expenses. When correctly calculated, CWS had average receipts over $7.5 million and thus was not small. *See* Bid Solve Opp'n at 20, ECF No. 53. So the Defendants lied about CWS's receipts when claiming that CWS was a small business. And those lies induced the agency to award CWS the contract.

The Defendants move for summary judgment. They argue that they win on two key elements of Bid Solve's claim—falsity and knowledge. *See* Defs. Mem. in Supp. of Mot. for Summ. J. (Defs. MSJ) at 10, ECF No. 52. In their view, CWS's receipts *were* below $7.5 million. And even if they got that wrong, they at least had good reason for thinking so. *See id.* at 1–3. Bid Solve moves for partial summary judgment, claiming that it wins on falsity. Bid Solve Mem. in Supp. of Cross-Mot. for Summ. J. (Bid Solve MSJ) at 1, ECF No. 54-1.

## II.

To win summary judgment, a party must show that "there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a fact is material if it could change the case's outcome. *See id.* The Court "view[s] the evidence in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in its favor." *Mastro v. Potomac Elec. Power Co.*, 447 F.3d 843, 850 (D.C. Cir. 2006).

The moving party must "identify[ ] those portions of the [record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S.

317, 323 (1986) (cleaned up).  Then, the opposing party must point to "specific facts showing that there is a genuine issue for trial."  *Id.* at 324 (cleaned up).

## III.

There is no genuine dispute about whether some of Defendants' statements were false. So the Court grants partial summary judgment to Bid Solve about those.  But whether Defendants knew that those statements were false is another matter.  Because that issue remains disputed, the Court denies Defendants' motion for summary judgment.  Their knowledge must be decided by a jury.

### A.

In Bid Solve's view, Defendants misreported that CWS was a small business.  Recall that to qualify as a small business CWS needed to have average annual "receipts" under $7.5 million over the last three years.  So did Defendants misstate CWS's average annual "receipts" as being below $7.5 million?  And were Defendants thus wrong to certify that CWS was a small business?  The answer to both questions hinges on 13 C.F.R. § 121.104(a) (2016), the regulation that governs how companies must calculate "receipts."

#### 1.

Section 104(a) defines receipts as "all revenue in whatever form . . . reduced by returns and allowances."  Bid Solve argues that CWS's receipts were much higher than it reported.  It says that Defendants improperly subtracted "flowthrough income" from CWS's revenue when certifying that it was a small business.  Bid Solve Opp'n at 1.  Defendants disagree.  In their view, receipts must be calculated based on the numbers reported in CWS's tax returns.  Because they faithfully did that, they cannot have lied.  *See* Defs. MSJ at 1.

Defendants misread the regulation:  They were not allowed to rely solely on CWS's tax returns.  And because of that, they should have never subtracted "flowthrough income" from CWS's total revenue.  So CWS's average receipts exceeded $7.5 million and Defendants wrongly certified that CWS was a small business.

First, consider Section 104(a)'s text:

> (a) Receipts means all revenue in whatever form received or accrued from whatever source, including from the sales of products or services, interest, dividends, rents, royalties, fees, or commissions, reduced by returns and allowances.  Generally, receipts are considered "total income" . . . plus "cost of goods sold" as these terms are defined and reported on Internal Revenue Service (IRS) tax return forms . . . .  Receipts do not include net capital gains or losses; taxes collected for and remitted to a taxing authority if included in gross or total income, such as sales or other taxes collected from customers and excluding taxes levied on the concern or its employees; proceeds from transactions between a concern and its domestic or foreign affiliates; and amounts collected for another by a travel agent, real estate agent, advertising agent, conference management service provider, freight forwarder or customs broker.  For size determination purposes, the only exclusions from receipts are those specifically provided for in this paragraph.  All other items, such as subcontractor costs, reimbursements for purchases a contractor makes at a customer's request, investment income, and employee-based costs such as payroll taxes, may not be excluded from receipts.
>
>> (1) The Federal income tax return and any amendments filed with the IRS on or before the date of self-certification must be used to determine the size status of a concern.  SBA will not use tax returns or amendments filed with the IRS after the initiation of a size determination.
>>
>> (2) When a concern has not filed a Federal income tax return with the IRS for a fiscal year which must be included in the period of measurement, SBA will calculate the concern's annual receipts for that year using any other available information, such as the concern's regular books of account, audited financial statements, or information contained in an affidavit by a person with personal knowledge of the facts.

Section 104(a) is best read as follows:  The first sentence gives the baseline definition of receipts.  Receipts are "all revenue . . . reduced by returns and allowances."  13 C.F.R. § 121.104(a).  The provision's third and fourth sentences clarify that only the listed items may be subtracted from the baseline receipts total.  *See id.*  ("For size determination purposes, the only exclusions from receipts are those specifically provided for in this paragraph.").  The fifth sentence specifies some items that *cannot* be subtracted from receipts, including

"reimbursements for purchases a contractor makes at a customer's request." *Id.*  And, as the second sentence suggests, calculating receipts will often be as simple as adding "total income" to "cost of goods sold," using a company's "tax return forms." *Id.*  Finally, sub-provision (a)(1) states that when looking to tax returns, a company must use only those returns that they have already filed. *See id.* § 121.104(a)(1).

Thus, § 104(a) provides a clear formula:  receipts are "all revenue . . . reduced by returns and allowances," and "the only exclusions from receipts are those specifically" listed in § 104(a).  Tax returns may be used to calculate receipts, but they cannot override § 104(a)'s basic rules.

Defendants disagree, proposing a different reading.  They urge that a subsection— § 104(a)(1)—required them to use *only* CWS's tax returns when calculating its receipts.  Defs. MSJ at 1.  That provision states that "The Federal income tax return and any amendments filed with the IRS on or before the date of self-certification must be used to determine" whether a business is small.  13 C.F.R. § 121.104(a)(1).  Plus, they add, the provision points to tax returns elsewhere too.  *Id.* § 121.104(a) ("Generally, receipts are considered 'total income' . . . plus 'cost of goods sold' as these terms are reported on "tax returns.").  In other words, if they plugged in numbers from CWS's tax returns, then they are in the clear, no matter if that calculation flouts other parts of the regulation.

This reading helps Defendants.  If they are right about how receipts are calculated, then CWS qualified as a small business because its average receipts were about $4.1 million.  *See* Defs. Resps. to Bid Solve Stat. of Mat. Facts (DSUMF) ¶ 14, ECF No. 57-2.[1]

---

[1]  True, Defendants admit that they overreported CWS's receipts number in the bid, instead listing $5.5 million.  *See* DSUMF ¶ 4.  But that helps Bid Solve little.  If Defendants just *overreported* CWS's receipts, then Bid Solve likely has no claim because Bid Solve also needs to show "causation and materiality." *United States ex rel. Cimino v. Int'l Bus. Machine Corp.*, 3 F.4th 412, 421 (D.C. Cir. 2021).  Thus, Bid Solve would need to show "the IRS would not have

But there is a glaring problem with Defendants' reading: It requires the Court to ignore swaths of the regulation. This case illustrates the point. The regulation says that "the only exclusions from receipts are those specifically" listed. 13 C.F.R. § 121.104(a). In other words, if an item is not listed in the provision, a company may not subtract it from "all revenue . . . reduced by returns and allowances." *Id.* And the regulation gives examples of things that *may not* be excluded from receipts, including "reimbursements for purchases a contractor makes at a customer's request." *Id.*

Yet here, Defendants excluded one of those prohibited items by removing "flowthrough income." They say that is okay because the regulation directed them to use tax returns when calculating receipts. Defs. MSJ at 1. But therein lies the problem. To agree with them is to simply ignore the prohibitions that they flouted: they subtracted an item not specifically listed as subtractable (violating the fourth sentence) and by doing that subtracted an item the regulation says is *not* subtractable (violating the fifth sentence). *See* 13 C.F.R. § 121.104(a).

Despite Defendants' protests, the regulation's statement that tax returns "must be used," does not change the best reading. There is another plausible way to read it—that sub-provision merely speaks to timing. When a company does look to its tax returns to calculate receipts, it must use those returns "filed with the IRS on or before the date of" its bid. *Id.* Indeed, as the next sentence explains, "SBA will not use tax returns . . . filed with the IRS after the initiation of a size determination." *Id.*

After all, "[s]tatutory construction . . . is a holistic endeavor." *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371 (1988). And thus, "[a] provision

---

entered the agreement but for" the overreporting and that the overreporting "was capable of influencing the government's decision to enter into [the] contract." *Id.* at 421–23. That is unlikely.

that may seem ambiguous in isolation is often clarified . . . because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law." *Id.*  That is the case here.  Defendants' reading is not compatible with the rest of the law.  Indeed, it ignores it.

The Court's reading also fits with related provisions.  For example, 13 C.F.R. § 121.1009(b) says that when making a size determination, the SBA will mostly rely on the information a bidder provided but "may use other information and may make requests for additional information."  So the agency is not limited to tax returns.  More, the Administration "will give greater weight to specific, signed, factual evidence than to general, unsupported allegations or opinions."  13 C.F.R. § 121.1009(d).  Thus, the agency may consider "allegations or opinions," another knock against Defendants' "only tax returns" theory.

None of Defendants' counterarguments help them.  For one, they argue that the regulation's amendment history supports their reading.  But, if anything, that history hurts their case.  They note that the version in effect at the time of their bid had been amended to add the first sentence (the basic definition of receipts) and the word "generally" at the beginning of the sentence that points to using tax returns.  Defs. MSJ 14–15.  Yet by doing this, the regulation moved further away from being tax-return based.  Defendants also cite a non-binding case about size determinations.  *Id.* at 15–17.  But it is not persuasive.  Nor is their reference to a policy statement in the Federal Register.  *Id.* at 16–17.  That statement describes the purpose of decades' old amendments and offers no response to the problems with Defendants' proposed reading.

Defendants also offer a declaration from a size specialist at the SBA.  *See id.* at 17 (citing Decl. of Helen Goza, ECF No. 52-27).  That Declaration mostly supports their view of the

provision.  For example, the specialist suggests that tax returns trump other information and that she is limited to reviewing tax returns when making size determinations.  *See* Goza Decl. ¶¶ 19–21 ("[E]ven if tax returns are not properly prepared . . . the regulations at 13 C.F.R. Part 121 provide that the Federal income tax returns and any amendments filed with the IRS . . . must be used to determine the size status of a concern.").  And Defendants suggest that the Court ought to defer to her view.  Defs. MSJ at 17 n.4.

The Court is unconvinced.  As the Supreme Court has emphasized, such deference to an agency's view of its own regulation is proper only where the "regulatory interpretation" is "the agency's "authoritative or official position." *Kisor v. Wilkie*, 139 S. Ct. 2400, 2416 (2019) (cleaned up).  Plus, the regulation at issue must be "genuinely ambiguous."  *Id.* at 2415.  Neither requirement is met here.

First, Helen Gaza's declaration does not appear to be the SBA's "authoritative or official position."  *Id.* at 2416 (cleaned up).  She is an "SBA size specialist," not a high-ranking administrator.  Goza Decl. ¶ 4.  And thus her declaration cannot be said to "emanate from those actors, using those vehicles, understood to make authoritative policy in the relevant context." *Kisor*, 139 S. Ct. at 2416.  More, she never claims that she is giving the SBA's official position or that she has been authorized to do so.  *Cf. Am. Tunaboat Ass'n v. Ross*, 391 F. Supp. 3d 98, 114–15 (D.D.C. 2019) (deferring to agency interpretation where assistant agency administrator and regional administrator approved agency position that plausibly interpreted ambiguous agency regulations).

Second, § 104(a) is unambiguous.  It is not "genuinely susceptible to multiple reasonable meanings."  *Kisor,* 139 S. Ct. at 2419.  Neither Defendants nor the agency have proposed a plausible alternative; their reading requires the Court to ignore half the provision.  And that

precludes deference as well. *Id.* at 2414 ("First and foremost, a court should not afford . . . deference unless the regulation is genuinely ambiguous.").

Finally, Defendants urge that their certifications cannot be false because CWS's tax returns were (at the very least) reasonably prepared. *See* Defs. MSJ at 10. But that does not matter. Tax returns may be used to calculate receipts, but they cannot be used to skirt § 104(a)'s clear guidance. Even if the CWS's tax returns were prepared correctly, Defendants still needed to calculate receipts using § 104(a)'s basic formula: receipts are "all revenue . . . reduced by returns and allowances," and "the only exclusions from receipts are those specifically" listed in § 104(a).

## 2.

With a proper gloss of § 104 established, consider how it applies here. CWS's receipts number was the three-year average of "all revenue . . . reduced by returns and allowances." 13 C.F.R. § 121.104(a). By CWS's own books, its average gross receipts were either $8.8 or $9.3 million, depending on whether that was calculated on an accrual or cash basis. *See* DSUMF ¶ 14. So to get below $7.5 million, some items had to be subtracted from that total. And that had to be done in accordance with § 104(a)'s requirement that only listed items could be excluded.

As Defendants admit, they get there *only* by removing what they call "flowthrough income." *See* DSUMF ¶ 15. Thus, unless they were allowed to remove that flowthrough income, they calculated receipts wrong and CWS was not a small business. So was that allowed by § 104(a)?

Defendants describe "flowthrough income" as "reimbursements for expenses incurred on behalf of and for the benefit of customers." Defs. MSJ at 6. Yet § 104(a) directs that such

money may not be excluded: "reimbursements for purchases a contractor makes at a customer's request . . . may not be excluded from receipts."  Nor do Defendants even try to argue that "flowthrough income" is one of the listed items that *may* be removed.  And thus even if Defendants could subtract "flowthrough income" on CWS's tax returns, they could not do so when calculating CWS's receipts.

So CWS's receipts exceeded $7.5 million.  And because of that, CWS was not a small business.

Thus, the Court denies Defendants' motion for summary judgment on this issue and grants partial summary judgment to Bid Solve.  In particular, the Court finds that Defendants' following statements were false:

1. In the April 6, 2017, SAM submission of CWS, the statement that the amount of its "Annual Receipts (in accordance with 13 CFR 121)" was $5,500,000;

2. In CWS's April 12, 2017, proposal, submitted to Treasury in response to Solicitation No. A17021, and signed on behalf of CWS by C. William Stearman, the statement that CWS was a "small" business, and the certification that CWS's SAM record was accurate;

3. In its August 25, 2017, submission to Treasury, signed by Stearman, the statement that CWS was "a small business under NAICS 561790";

4. In its September 27, 2017, submission to Treasury, signed by Stearman, the statement that CWS was "a small business under NAICS 561790";

5. In its March 9, 2018, submission to SBA in response to Bid Solve's size protest, the statements in the letter signed by Stearman that CWS was "small" and had average annual receipts below $7.5 million; and

6. In its March 9, 2018, submission to SBA, the statements in the SBA Form 355, certified by Stearman, concerning the amounts of CWS's gross receipts, including the statement that its gross receipts for the period 2014-2016 were only $12,438,876.20.

Indeed, the first statement is wrong even under Defendants' own reading of § 104(a).  *See* DSUMF ¶ 4 (The Defendants admit they "over-reported [CWS's] annual receipts . . . as being" $5.5 million.).  And all the other statements are false because CWS's annual receipts exceeded

$7.5 million, and thus it was not a small business.  *See id.* ¶¶ 14–15 (listing average gross receipts as exceeding $7.5 million and admitting that the smaller average calculated from CWS's tax returns came from removing "flowthrough income").

## B.

Next, consider knowledge.  "To be liable under the FCA, [defendants] must have made the false claims knowingly."  *U.S. ex rel. Purcell v. MWI Corp.*, 807 F.3d 281, 287 (D.C. Cir. 2015).   A defendant "acts knowingly under the FCA by (1) having actual knowledge, (2) acting in deliberate ignorance, or (3) acting in reckless disregard."  *Id.* (cleaned up).  Defendants say that they are entitled to summary judgment on this issue because there is no genuine dispute of material fact about it.  Again, the Court disagrees.

A reasonable jury could find that Defendants knew that the size and receipts statements were false.  For one, § 104(a) specifically says not to subtract "reimbursements for purchases a contractor makes at a customer's request" from revenue when calculating receipts.  Yet Defendants did exactly that.  And try as they might to explain it away, § 104(a) remains clear.

Plus, CWS appears to have simply conjured a random receipts number for its bid.  Even under their own reading of § 104(a), CWS's reported $5.5 million in receipts was off by more than a million dollars.  *See* DSUMF ¶ 4.  Defendants missed by a country mile.  And that type of carelessness suggests (at least) a reckless indifference to the truth.

Then there are Stearman's emails with a CWS consultant.  In one, sent after Bid Solve cried foul to the agency, he wrote "I think we are fine but makes me nervous."  SUMF ¶ 252. Later that day, the consultant told Defendants that "flow-through income includes all of the items *we were afraid they did* and that should not be excluded from the 'annual receipts' calculation." *Id.* ¶ 259 (emphasis added).  These emails could reasonably suggest that Defendants were

worried that they had misreported CWS's receipts and thus provide another piece of evidence from which a reasonable jury could find knowledge.

Defendants offer four retorts.  First, they say "there is no evidence . . . that CWS or any employee or owner subjectively knew or understood that [CWS's] size certifications were false." Defs. MSJ at 23.  Not so.  As mentioned above, there *is* evidence from which a reasonable jury could infer that Defendants knew the certifications were false.  They may reasonably quibble with that evidence's weight, but it is not the Court's job to break out the scale at summary judgment.  *See Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 150–51 (2000).

Second, Defendants claim that there is a lot of evidence "showing that CWS'[s] actions in certifying its size . . . were at all times reasonable given what it knew at the time."  Defs. MSJ at 23.  That may be so.  But this would not make summary judgment appropriate.  On summary judgment, the Court must "give credence to the evidence favoring the nonmovant."  *Reeves*, 530 U.S. at 151.  And that evidence, as explained above, makes this issue one for a jury.

Defendants' third argument fails for the same reason.  They say that they are entitled to summary judgment because they gave "accurate, complete financial information" to the SBA when that agency was investigating CWS.  Defs. MSJ at 23–24.  Again, that helps their case and might persuade a jury.  But it does not make this issue undisputed.

Finally, Defendants say that they made all the challenged statements based on a good-faith reading of § 104(a) and the tax code.  *See* Defs. MSJ at 33–41.  As the D.C. Circuit has held, if a legal obligation is ambiguous, and Defendants' reading of it was "objectively reasonable," then they win on knowledge.  *MWI*, 807 F.3d at 288.  But this doctrine does not save Defendants now.

For one, § 104(a) is unambiguous.  It specifically barred them from removing flowthrough income.  And its statement about using tax returns must be read to refer merely to timing; if tax returns are used, they must have been submitted to the IRS before the bid is entered.  Nor is Defendants' reading of that regulation "objectively reasonable."  *Id.*  They would have the Court ignore half the provision.  More, their reading would reward tax fraud.  A company could file bogus returns and then rely on those to claim that it is a small business.  And a rejected competitor would be out of luck, even if it could prove that the winning company had lied on its returns.

Defendants also claim that CWS prepared its tax returns reasonably.  But on the right reading of § 104(a), this does not save them because they were not allowed to rely solely on those tax returns.  Instead, they needed to follow § 104(a)'s direction not to remove flowthrough income.  So even if the tax returns were reasonably accurate, Defendants' certifications about CWS's receipts and small business status were not.  And thus, *MWI's* safe harbor provides no escape at summary judgment.

## IV.

Because of all this, it is hereby

**ORDERED** that Bid Solve's [54] Cross Motion for Partial Summary Judgment is GRANTED, and it is

**ORDERED** that Defendants' [52] Motion for Summary Judgment is DENIED.

**SO ORDERED.**

Dated: May 18, 2023

_____
TREVOR N. McFADDEN, U.S.D.J.